UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CODY L. EVANS,<br><br>    Plaintiff,<br><br>v.<br><br>LAKEWOOD REHABILITATION AND HEALTHCARE CENTER, et al.,<br><br>    Defendants. | CIVIL ACTION NO. 3:24-CV-01754<br><br>(SAPORITO, J.) |

## MEMORANDUM

On October 10, 2024, the plaintiff, Cody Evans, filed a complaint against four defendants[1] for claims related to his alleged sexual harassment during his employment. (Doc. 1). Specifically, the plaintiff alleges the following claims: (1) hostile work environment in violation of Title VII; (2) retaliation in violation of Title VII; (3) sex discrimination in violation of the Pennsylvania Human Relations Act; (4) negligence; (5) intentional infliction of emotional distress; and (6) negligent infliction of emotional distress. On January 31, 2025, the defendants filed a partial

---

[1] The defendants are (1) Lakewood Rehabilitation and Healthcare Center, (2) Nanticoke Rehabilitation and Healthcare, LLC, (3) Noelle Glazenski, and (4) Melissa Sweetz.

motion to dismiss concerning the plaintiff's claims of sex discrimination under the PHRA, negligence, intentional infliction of emotional distress, and negligent infliction of emotional distress. (Doc. 9). The parties have fully briefed the motion (Doc. 19; Doc. 22) and it is now ripe for review.

## I. Background[2]

The plaintiff was hired as the Director of Human Resources at the Lakewood Rehabilitation and Healthcare Center in July of 2023. The plaintiff contends that he suffered "egregious, severe, and pervasive sexual harassment" by two female Lakewood employees, Noelle Glazenski ("Noelle") and Melissa Sweetz ("Melissa"), throughout his employment at Lakewood. Noelle and Melissa both served in a management capacity as superiors to the plaintiff.

The plaintiff alleges that shortly after being hired, Noelle and Melissa began to instigate inappropriate communications with him, both privately and publicly in front of other employees, which subsequently evolved into comments with sexual undertones on a daily basis. The plaintiff has provided numerous examples of this conduct in his

---

[2] The facts are taken from the plaintiff's complaint. (Doc. 1).

complaint.³ Moreover, the plaintiff contends that at one point, Noelle slapped the plaintiff's backside in front of the plaintiff's fiancée and told his fiancée that she "was lucky to be marrying someone" with such impressive physical features. These actions, among others, made the plaintiff feel like a "sex object," and the plaintiff posits that "not a day went by that [] harassing comments were not made." The plaintiff alleges that he was forced to seek treatment with a counselor due to his declining mental health.

On January 12, 2024, the plaintiff was fired from his job. He alleges that his termination stemmed from his resistance from engaging with Noelle and Melissa. The plaintiff avers that the defendants' sexual harassment was well-known throughout Lakewood, and that Noelle and Melissa utilized their relationship with Andrew Wolak, a Chief Operating Officer, to deter any reporting of inappropriate behaviors. He alleges that

---

³ Examples include the following: (1) "Noelle would tell Cody that she 'had been bad' and 'needed to be punished.'"; (2) "Noelle and Melissa would tell Cody that they had trouble concentrating while staring at his crotch, and would comment on his appearance regularly, i.e. 'your ass looks good in those pants.'"; (3) "Cody was told that he was 'attractive when reprimanding' employees in his role as Director of HR and that they 'wanted to watch.'"; and (4) "Noelle also once told Cody to grab her by the hair and to push her face into his crotch.'" (Doc. 1).

the defendants retaliated against him for asserting his rights under law by terminating him, as he never received any warnings or indications that his work was done unsatisfactorily.

In this lawsuit, the plaintiff alleges that he has satisfied all conditions precedent to jurisdiction under Title VII. He states that he dual-filed a charge of employment discrimination with the Pennsylvania Human Relations Commission ("PHRC") and the Equal Employment Opportunity Commission ("EEOC") within 180 days of the alleged discrimination. Moreover, he states that he received a right to sue letter by the EEOC and filed this complaint within 90 days of the receipt of the EEOC's notification of his right to sue. The plaintiff further alleges that all the discriminatory employment practices and conduct alleged herein were committed within the Commonwealth of Pennsylvania. The plaintiff has yet to receive a disposition by the PHRC.

## II.   Legal Standard

Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes a defendant to move to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "Under Rule 12(b)(6), a motion to dismiss may be granted only if, accepting all well-pleaded

allegations in the complaint as true and viewing them in the light most favorable to the plaintiff, a court finds the plaintiff's claims lack facial plausibility." *Warren Gen. Hosp. v. Amgen Inc.*, 643 F.3d 77, 84 (3d Cir. 2011) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007)). In deciding the motion, the Court may consider the facts alleged on the face of the complaint, as well as "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). Although the Court must accept the fact allegations in the complaint as true, it is not compelled to accept "unsupported conclusions and unwarranted inferences, or a legal conclusion couched as a factual allegation." *Morrow v. Balaski*, 719 F.3d 160, 165 (3d Cir. 2013) (quoting *Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007)). Nor is it required to credit factual allegations contradicted by indisputably authentic documents on which the complaint relies or matters of public records of which we may take judicial notice. *In re Washington Mut. Inc.*, 741 Fed. App'x 88, 91 n.3 (3d Cir. 2018); *Sourovelis v. City of Philadelphia*, 246 F. Supp. 3d 1058, 1075 (E.D. Pa. 2017); *Banks v. Cty. of Allegheny*, 568 F. Supp. 2d 579, 588–89 (W.D. Pa. 2008).

III. Discussion

The defendants have moved to dismiss four of the plaintiff's claims. First, the defendants argue that the plaintiff's claims of sex discrimination in violation of the PHRA must be dismissed on procedural grounds, as they contend that the plaintiff has failed to administratively exhaust his claims under the PHRA. Second, the defendants move to dismiss the plaintiff's claims of IIED, NIED, and negligence on the basis that those claims are preempted by the Pennsylvania Workers' Compensation Act ("PWCA").

A. The PHRA

Under Pennsylvania law, a plaintiff is required to exhaust administrative remedies under the PHRA before filing a civil action. 43 Pa. C.S. § 962(c)(1); *Harrison v. Health Network Lab'ys Ltd.*, 232 A.3d 674, 683 (Pa. 2020); *Woodson v. Scott Paper Co.*, 109 F.3d 913, 923 (3d Cir. 1997). "When a claim is filed with the PHRC, the PHRC has exclusive jurisdiction over the claim for one year after its filing, unless the PHRC resolves the claim before the end of the one-year period." *Perry v. Eagle Lake Cmty. Ass'n, Inc.*, No. CV 3:23-811, 2024 WL 1144230, at *1 (M.D. Pa. Mar. 15, 2024) (citing 43 P.S. § 692(c)(1)). "If after one year the claim

Case 3:24-cv-01754-JFS   Document 23   Filed 04/21/25   Page 7 of 13

has not been resolved, the plaintiff may then file suit in court." *Id.* (citing 43 P.S. § 692(c)(1)); *Burgh v. Borough Council of Borough of Montrose*, 251 F.3d 465, 471 (3d Cir. 2001). "Once a plaintiff files a charge under the PHRA, she must adhere to the mandatory administrative procedure. The administrative process is not discretionary." *Id.* (citing *Clay v. Advanced Computer Applications, Inc.*, 559 A.2d 917, 921 (Pa. 1989)). "Therefore, if a plaintiff fails to complete the administrative process prior to filing a civil action, dismissal of the PHRA claims is required." *Id.* (citing *Clay*, 559 A.2d at 922–23).

Here, the defendants and the plaintiff differ on whether receiving a right to sue letter from the EEOC satisfies the exhaustion requirement for purposes of a PHRA claim. We need not, however, undertake a significant analysis concerning this issue. The court in *Perry v. Eagle Lake Cmty. Ass'n, Inc.* recently ruled on this very issue based on circumstances that mirror those seen in this current action. In *Perry*, the plaintiff dual-filed her complaint with the EEOC and the PHRC on April 21, 2023, receiving a right to sue letter from the EEOC on April 28, 2023. *Id.* There, the plaintiff argued, similarly as the plaintiff does here, that her dual-filing of the EEOC complaint and receiving a right to sue letter

- 7 -

from that agency satisfied the exhaustion requirement for purposes of her PHRA claims. *Id.* She argued that she did not need to wait the full one-year period before filing her PHRA claims. The *Perry* court disagreed, finding that "[t]he exhaustion requirements of the PHRA are mandatory and dictate dismissal of PHRA claims where the administrative process has not been complete prior to the filing of a civil action." *Id.* Thus, it concluded that even though the plaintiff received a right to sue letter from the EEOC, the "one-year time period for which the PHRC retain[ed] exclusive jurisdiction ha[d] yet to lapse." *Id.* The court consequently dismissed the plaintiff's PHRA claims. *Id.*

We find *Perry* applicable to this case as the arguments made by both the defendants and the plaintiff remain the same. Therefore, we find that the plaintiff has failed to exhaust all administrative remedies as required by the PHRA to bring forth his claim under the PHRA. Although the EEOC issued the plaintiff a right to sue letter on August 12, 2024, the PHRC still retains exclusive jurisdiction over his PHRA claims for a period of one-year after his filing of those claims on April 30, 2024. *See* (Doc. 19, at 5). We note, however, the plaintiff's claims are subject to refiling after the expiration of the PHRA's one-year period. *See Perry*,

2024 WL 1144230 at *1; *Magerr v. City of Philadelphia*, No. CVv15-4264, 2016 WL 1404158, at *12 (E.D. Pa. Apr. 11, 2016). Therefore, we will dismiss the plaintiff's PHRA claim without prejudice.

### B. Preemption under the Pennsylvania Workers' Compensation Act

The defendants move to dismiss the plaintiff's NIED, IIED, and negligence claims on the basis that the PWCA preempts those claims. The PWCA provides the exclusive remedy for all employees' work-related injuries. *Joyner v. Sch. Dist. of Philadelphia*, 313 F. Supp. 2d 495, 503 (E.D. Pa. 2004). As a general rule, "[t]he exclusivity provision of [the PWCA] bars claims for 'intentional and/or negligent infliction of emotional distress [arising] out of [an] employment relationship.'" *Imboden v. Chowns Commc'ns*, 182 F. Supp. 2d 453, 456 (E.D. Pa. 2002) (quoting *Matczak v. Frankford Candy & Chocolate Co.*, 136 F.3d 933, 940 (3d Cir. 1997)) (citations omitted). Courts have consistently held that "[a]ny claim for negligent infliction of emotional distress which arises out of an employment relationship is [] barred by the Act."[4] *Hoover v.*

---

[4] The plaintiff admits that the WCA's exclusivity provision applies to workplace injures that are negligent and accidental. *See* (Doc. 19 at 6) ("The WCA's exclusivity provision applies only to workplace injures that are accidental….").

*Nabisco, Inc.*, No. CIV.A. 99-1452, 1999 WL 1073622, at *2 (E.D. Pa. Nov. 10, 1999). These claims additionally extend to claims of general negligence. *See Campbell v. Fireman's Fund Ins. Companies*, 662 F. Supp. 273, 275 (E.D. Pa. 1986) ("Allegations of negligence or wanton or reckless conduct are not sufficient to protect a claim from the preemptive effect of the exclusivity clause."); *see also Koslop v. Cabot Corp.*, 622 F. Supp. 222, 225 n.3 (M.D. Pa. 1985). Therefore, we find that the plaintiff's claims of NIED and negligence are barred by the PWCA.

However, while IIED claims are generally barred by the PWCA, courts have found that there may be an exception for claims of IIED that fall under the personal animus exception. *See Rorrer v. Cleveland Steel Container*, 712 F. Supp. 2d 422, 436 (E.D. Pa. 2010). This exception allows a plaintiff to recover from a defendant any "injuries caused by an act of a third party [including co-workers] intended to injure the employee because of reasons personal to him, and not directed against her as an employee or because of his employment." *Id.* (quoting *Faust v. Storm*, 2009 WL 2143546, at *7 (E.D. Pa. July 15, 2009)) (citations omitted); *see also* 77 Pa. Stat. § 411(1). "[T]he critical inquiry in determining the applicability of the [personal animus] exception is whether the attack

was motivated by personal reasons, as opposed to generalized contempt or hatred, and was sufficiently unrelated to the work situation so as not to arise out of the employment relationship." *Fugarino v. Univ. Servs.*, 123 F. Supp. 2d 838, 844 (E.D. Pa. 2000). The plaintiff has argued that his claims fall under the personal animus exception. (Doc. 19, at 6–8) ("The harassment was pervasive, targeting Plaintiff's dignity, self-worth, and emotional stability in a way that was deeply personal and outside the ordinary scope of workplace interactions.").

In the context of sexual harassment, the Third Circuit has not definitively held whether IIED claims are preempted under the PCWA. *See Durham Life Ins. Co. v. Evans*, 166 F.3d 139, 160 n.16 (3d Cir. 1999) ("[W]e suspect that Pennsylvania would find IIED claims based on [sexual] harassment to be preempted. But we cannot be sure, and we express no opinion as to whether an IIED claim for harassment more disconnected from the work situation would be preempted...."). Indeed, courts in this Circuit have varied considerably in how and when they apply the personal animus exception in sexual harassment cases. *Compare Brooks v. Mendoza*, No. CIV.A. 00-5045, 2002 WL 467157, at *1, *4 (E.D. Pa. Mar. 26, 2002) (finding the exception to apply where the

defendant "taunt[ed] [the plaintiff] with a vibrating object in his pants," "pursu[ed] [her] around the restaurant despite her protests," and "uttered obscene remarks to her") with *Iacono v. Toll Bros.*, No. CIV.A. 01-4486, 2001 WL 1632138, at *2 (E.D. Pa. Dec. 19, 2001) (finding the exception inapplicable to a claim of sexual harassment because "all of the allegedly offensive conduct occurred at work and arose out of the employment relationship."). The applicability of the personal animus exception relies on "the distinction between employment-related and purely personal discriminatory motives irrelevant to employer liability." *Durham Life*, 166 F.3d at 160 n.16.

Here, the plaintiff has alleged that defendants' conduct was deeply personal and outside the ordinary scope of workplace interactions. Upon review of the plaintiff's complaint, it is unclear the extent to which the alleged sexual harassment arose out of the workplace relationship. We find that a more robust factual record is needed to determine whether the sexual harassment arose out of the workplace relationship. At the very least, the plaintiff's allegations, which we must accept as true, have raised a reasonable expectation that discovery may reveal evidence of sexual harassment that falls under the personal animus exception. *See*

*Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)) ("The Supreme Court's *Twombly* formulation of the pleading standard … 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element."). We will therefore deny the defendants' motion to dismiss concerning the plaintiff's IIED claims.

### IV. Conclusion

For these reasons, we will grant the defendants' motion to dismiss in part and deny the motion in part. We will dismiss the plaintiff's claims of negligence and negligent infliction of emotional distress with prejudice. We will dismiss the plaintiff's claims of sex discrimination in violation of the PHRA without prejudice. We will allow the plaintiff's claim of intentional infliction of emotional distress to proceed.

An appropriate order follows.

Dated: April 21, 2025            *s/Joseph F. Saporito, Jr.*
                                 JOSEPH F. SAPORITO, JR.
                                 United States District Judge